## DURANT NAT. BANK v. BENNETT & CO.

. No. 18656.   Opinion Filed Oct. 16, 1928.·

Hayes & Hayes, for plaintiff in error.

Phillips & Phillips and J. R. Hannah, for defendants in error.

HERR, C.   This is an action by Bennett & Company, a copartnership, against the Durant National Bank, for damages because of the refusal of the bank to surrender certain cotton tickets held by it as collateral security for money advanced said partnership.   There was judgment for plaintiffs in the sum of $130.25.   Defendant appeals.

It appears that plaintiffs, through W. C. Slaughter, active vice president of the defendant bank, made arrangements with said bank to furnish and advance them money with which to buy cotton during the season of 1924.   As security for such advances, it was agreed that cotton tickets representing cotton purchased should be deposited with the bank, and that plaintiffs should execute a mortgage to the bank in the sum of $3,000 on certain real estate as additional security to cover any losses which might be sustained by plaintiffs in the handling of the cotton. In accordance with this agreement, the mortgage above mentioned was executed by plaintiffs, and defendant bank, from time to time, advanced the plaintiffs funds for the purchase of cotton, the tickets being deposited with it as security, and, upon the sale of the cotton by plaintiffs, drafts were drawn on the purchaser with tickets attached and the proceeds remitted to the bank.

It further appears that on October 10th, plaintiffs had on hand 200 bales of cotton; that defendant bank held the tickets; that on said date plaintiffs sold said cotton to M. H. Thomas & Company of Dallas, Tex., the price being fixed at 40 points off New York December; said cotton to be called by plaintiffs at any time within 15 days from date of sale, and the price to be fixed upon date of the call.   The cotton, under the terms of the sale, was to be shipped immediately, and all insurance, storage, interest, and other carrying charges were to be shifted from plaintiffs to the purchaser thereof.

It further appears that immediately after said sale, plaintiffs went to defendant bank and drew a draft on M. H. Thomas & Company for said cotton, less $2.000 margin, which amount was to be retained by said firm to protect it against any loss which might arise because of a drop in the market between the date of the sale and the call date, and requested the bank to surrender the tickets, in order that the same might be attached to the draft.   This the bank refused to do unless the draft was drawn for the full purchase price of the cotton.   In other words, the bank insisted that if plaintiffs desired possession of the tickets, it must call the cotton immediately and draw the draft for the full amount.   This difference between the parties resulted in a severance of the relation between them, and defendant bank refused to further finance plaintiffs in the purchase of cotton except as to a small amount necessary to complete a purchase of 50 bales.   It further appears that plaintiffs held the cotton at their own expense until October 21st, at which time it was called, a draft drawn on the purchaser with tickets attached, and the proceeds remitted to the bank.

The cost of carrying the cotton between October 10th, the date of the sale, and October 21st, the date of the call, amounted to $130.25.   In this amount plaintiffs claim they were damaged by the bank because of its refusal to surrender the tickets on the date of the sale, their contention being that had the bank surrendered the tickets on the 10th, the cost of carriage from that time up to and including the 25th, the last day on which the cotton could have been called, would have been on the purchaser and not on them.

The theory of the plaintiffs is that there

was an implied agreement between them and the defendant bank that cotton might be sold on call, and the tickets surrendered without payment to the bank of the full purchase price of the cotton represented by the tickets. If such agreement existed between the parties, the bank would be liable to plaintiffs for any damage occasioned by a breach on its part, but, in the absence of any such agreement, the bank was entitled to hold the tickets until paid in full for the cotton represented by the tickets. 31 Cyc. 853. And this is true even though it had taken additional security for the money advanced. 21 R. C. L. 269.

Does the evidence establish a special agreement? We think not. It is not contended by plaintiffs that the bank at any time ever expressly agreed to surrender tickets upon payment of an amount less than due, but they contend that such agreement is implied and established through custom and course of conduct and dealing between the parties. The evidence on this point is to the effect that plaintiffs had been dealing with the defendant bank for a period of about 10 years; that the bank advanced them money from year to year to buy cotton; that plaintiffs were always permitted to sell the cotton on their own judgment, and that upon several occasions cotton was sold on call, and the tickets surrendered by the bank on payment of less than the amount due; that defendant agreed to finance plaintiffs as on previous years; that it was customary among cotton dealers to sell cotton on call, and that banks financing cotton dealers frequently surrendered the tickets without demanding payment in full; that during previous years plaintiffs were not required to give other security than the cotton tickets, but that during the present year Mr. Slaughter, the active manager of the bank, required additional security; that during the prior years, in which plaintiffs dealt with the bank, Mr. Slaughter was not the active manager of the bank.

This is, in substance, the testimony upon which it is sought to establish a special agreement upon the part of the bank precluding it from demanding full payment before surrendering the tickets. It is the contention of the defendant that this evidence is wholly insufficient to establish such agreement, and at the conclusion of the testimony it moved the court for a directed verdict in its favor. In our opinion, this motion should have been granted.

The mere fact that on several occasions, during prior years, under arrangements made with a different managing officer, said bank waived a portion of its legal rights, does not bind the bank or compel it to continue to do so throughout all time and during any and all future years it might have dealings with plaintiffs. Custom prevailing at other banks in such transactions would not be binding on the defendant.

Judgment should be reversed, and the cause remanded, with instructions to enter judgment in favor of the defendant.

BENNETT, HALL, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.